CLIFFORD A. HOURSTON, d/b/a SOUTHERN CROSS ENGINEERING AND FOUNDRY WORKS,

Appellant in No. 71-1931

v.

HARVLAN, INC., Appellant in No. 71-1932

Nos. 71-1931, 71-1932

United States Court of Appeals

Third Circuit

Argued January 27, 1972

Decided March 28, 1972

HARRY E. WOODS, ESQ., Santurce, Puerto Rico, *for appellant*

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, V.I., *for appellee*

Before SEITZ, *Chief Judge*, ALDISERT and GIBBONS, *Circuit Judges*

## OPINION OF THE COURT

SEITZ, *Chief Judge*

This is an appeal by Harvlan, Inc. ("defendant") from a district court judgment entered on a jury verdict awarding $40,000 to Clifford A. Hourston ("plaintiff") as a finder's fee. A previous jury had awarded plaintiff $50,000 which was set aside and a new trial ordered. On cross-appeal plaintiff challenges the new trial order and seeks reinstatement of the original verdict.

■ We have decided that the judge presiding over the first trial abused his discretion in granting defendant's motion for a new trial. Therefore, only the events of that first proceeding as they related to the court's order need be evaluated. The five grounds given by the court in support of its new trial order will be treated seriatim. Preliminarily, however, we note that this Circuit varies the standard controlling a review of an order granting a new trial in accordance with the particular ground which the trial court adopts for its decision. Thus we have stated that on appeal a broad discretion should be recognized in the trial court when its order granting a new trial is based on its conclusion that evidence was improperly admitted or that prejudicial statements were made by counsel. See Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir. 1960). If the order rests on the court's belief that the verdict was against the weight of the evidence, however, closer scrutiny is required by us on review. This is especially true when, as here, "the litigation deals with material which is familiar and simple, . . . lying well within the comprehension of [the] jurors. . . ." Id. at 91. See Grove v. Dun & Bradstreet, Inc., 438 F.2d 433, 438 (3d Cir. 1971).

### (1) THE EVIDENCE AS A WHOLE PREPONDERATED IN FAVOR OF THE DEFENDANT

■ The appropriate test to be applied by the court in considering defendant's motion for a new trial was not whether the evidence "preponderated" in favor of one party or another. Rather, the court was required to decide whether sufficient evidence existed on the record which, if accepted by the jury, could sustain the verdict. As we noted in Lind v. Schenley Indus., Inc., 278 F.2d 79, 91 (3d Cir. 1960), any other standard would permit the trial court to substitute its judgment for that of the jury. We now con-

sider the evidence to determine whether the district court, under the proper standard, might permissibly have granted a new trial.

The dispute between the parties concerns essentially two issues of material fact: (a) whether, pursuant to the parties' non-exclusive brokerage agreement, defendant was obligated to compensate plaintiff for plaintiff's efforts in causing the Venezuelan group, Central la Pastora ("Pastora"), to purchase defendant's mill; and (b) if so, what percentage of the $500,000 purchase price was agreed upon as commission. As to issue (a) it was admitted by defendant that early in 1966, Louis Warschaw as president of defendant contacted plaintiff and requested that plaintiff attempt to locate a purchaser for defendant's Bethlehem sugar mill ("Bethlehem"). Plaintiff testified that on February 17, 1966, in response to this request, he mailed to numerous prospective purchasers including Pastora a flyer listing and briefly describing Bethlehem and several other sugar mills then for sale. Witnesses representing Pastora testified to having received this flyer. In accordance with alleged broker practice under non-exclusive arrangements the identities and locations of the listed facilities were not disclosed. Pastora therefore responded to plaintiff with a request for further details relative to Bethlehem. Upon receipt of this response plaintiff registered Pastora with defendant as a prospective purchaser. This procedure admittedly conformed with the parties' brokerage arrangement. According to plaintiff's uncontradicted testimony it had been agreed that by registering an interested buyer plaintiff's commission would be protected in the event that his prospect ultimately purchased Bethlehem. Plaintiff was not required to participate in the actual negotiations. Rather, defendant itself retained this responsibility.

After registering Pastora as a prospect plaintiff made a written reply to Pastora's request for further information. This reply was delayed until plaintiff personally completed an inventory of Bethlehem. However, pending completion he spoke with Pastora officials by phone, disclosing Bethlehem as the mill in which they were interested and instructing them to contact officials of defendant directly. Personal contact was thereafter made and the sale of Bethlehem was consummated.

■ Much of plaintiff's testimony was corroborated by documentary evidence. Also, except for one matter discussed subsequently, it is not contended that even if plaintiff's testimony were believed by the jury, nevertheless he failed to establish a prima facie case as to his right to receive a commission. We conclude that the plaintiff's uncontradicted evidence warranted the jury's finding that plaintiff was the procuring cause of defendant's sale of Bethlehem to Pastora. The first trial judge, by substituting his evaluation of the evidence for that of the jury on this issue, abused his discretion. Cf. Lind v. Schenley, supra at 91.

We reach the same conclusion insofar as the trial court decided that the award of $50,000 was against the weight of the evidence. Here again there was testimony by plaintiff that defendant had promised him a commission of 10% of the sale price if that figure ranged between $500,000 and $600,000. We cannot agree with defendant's position that this testimony was rendered inherently incredible by reason of its apparent inconsistency with plaintiff's letter to defendant purporting to confirm their commission arrangement as to amounts equal to or in excess of $600,000.

## (2) PLAINTIFF PRODUCED NO MORE THAN A SCINTILLA OF EVIDENCE THAT HE WAS THE PROCURING CAUSE OF THE SALE OF BETHLEHEM TO PASTORA

If the district court was correct on this ground, it would seem that it should have granted defendant's motion for judgment n.o.v. But the short answer is that while a mere scintilla is not enough, we think plaintiff carried his burden of producing sufficient evidence of procuring cause to create a jury issue. See Gunning v. Cooley, 281 U.S. 90, 94 (1930). See also McVay v. American Radiator & Sanitary Corp., 1 F.R.D. 677, 678 (W.D. Pa.), aff'd 119 F.2d 593 (1941). Most important is the undisputed testimony that plaintiff's February 18th flyer preceded by a month or more any contact with Pastora by others purportedly authorized to act on behalf of Bethlehem.

Defendant contends that the date determinative of plaintiff's right to a commission is April 11, 1966, when he registered Pastora with defendant, and that documentary evidence irrefutably demonstrated that Warner, the broker ultimately awarded the finder's fee for locating Pastora, had introduced the Venezuelan group to defendant's officials prior to this date. Even if we accept April 11 as controlling with regard to plaintiff's case, defendant's exhibits do not conclusively establish that Warner rather than plaintiff should have received the non-exclusive commission.

Specifically, defendant points to four letters introduced at trial. Each purports to be correspondence from Warner to particular officials of defendant alluding to the interest of Pastora in purchasing Bethlehem. Three of the four letters predate plaintiff's registration of Pastora with defendant. In the earliest, dated March 30, 1966 Warner notified defendant that he had been in touch with a party wishing to negotiate regarding Bethlehem. The identity of the party is undisclosed, however. Next, in the letter of

April 8, Warner alerted defendant's general manager that he and at least one other person would inspect Bethlehem on April 30. Again, Warner does not reveal who would be with him. The third letter dated April 9, is from Warner to the president of defendant discussing several used sugar mills then for sale and noting again Warner's proposed visit to Bethlehem on the 30th. According to the letter Warner would be accompanied by "two friends." Thus, none of these alleged "conclusive" exhibits purported to reveal to defendant that Warner's interested purchaser was Pastora. If the jury's implicit finding that plaintiff was the procuring cause of Bethlehem's sale to Pastora necessarily turned on registration per se, therefore, we cannot conclude that this finding was not supported by plaintiff's evidence.

A Pastora official did testify that in fact he accompanied Warner on the April 30 inspection noted by defendant's exhibits. However, the official could not support his testimony by any reference to a contemporaneous immigration stamp on his passport. Indeed, even if his testimony were believed it would not demonstrate that defendant was aware, prior to the plaintiff's registration of Pastora on April 11, that Pastora also was purportedly the client Warner sought to have inspect the mill.

In view of the record, therefore, we cannot agree with the district court that plaintiff failed to produce more than a scintilla of evidence that he was the procuring cause of the sale of Bethlehem to Pastora by defendant.

(3) PLAINTIFF'S CHARGE OF CONSPIRACY RESTED SOLELY ON INNUENDO AND WAS UNSUPPORTED BY ONE IOTA OF SWORN TESTIMONY

■ This ground for the court's order condemned the references by plaintiff's counsel to a conspiracy between

Warner, who allegedly was acting merely as a straw man, and Bethlehem and Pastora. According to the trial judge such references were supported only by innuendo arising from the cross-examination by plaintiff's counsel of the defendant's witnesses. The "innuendo" did not emerge solely from the phraseology of counsel's leading questions, however. Defense witnesses expressly acknowledged that at the negotiations a representative of Pastora suggested to the president of Bethlehem that the sale price might be reduced if a rebate or kickback of the broker's commission could be obtained. It was maintained that the "suggestion" was made only as a joke. But, whether in fact it rose no higher than a joke in the minds of the negotiators was for the jury to determine. Therefore, we conclude that the court erred in basing its order on this ground.

(4) THE COURT ERRED IN PERMITTING ARGUMENT
OF CONSPIRACY AND PLAINTIFF'S COUNSEL
COMMITTED PREJUDICIAL ERROR BY REFERENCES
TO MATTERS DEHORS THE RECORD

The conclusion that no argument of conspiracy should have been allowed turned apparently on the court's belief either that the existence of such a conspiracy was irrelevant to a determination of plaintiff's right to a commission or, in the alternative, that such references suggested a potential for prejudice to defendant which outweighed any relevancy a finding of conspiracy by the jury might otherwise possess. The record indicates, however, that the court explicitly instructed the jury to disregard any allusions to a conspiracy made either at trial or during counsel's closing argument. In view of this instruction we feel that the prejudice, if any, which may have occurred was at best de minimis. Cf. Harkins v. Ford Motor Co., 437 F.2d 276, 278 & n.6 (3d Cir. 1970).

## (5) THE INTERESTS OF IMPARTIAL JUSTICE DEMANDED A NEW TRIAL

█ Only this ground and that part of the fourth ground noting counsel's "impassioned references to matters dehors the record" remain to support the court's order. This ground, however, must fail for lack of specificity. See id. at 277. Neither the order nor defendant's memorandum attached to its motion detail record support for the court's conclusion that a new trial was mandated in the interest of "impartial justice." Specificity is suggested in defendant's memorandum for the court's observation that plaintiff's counsel prejudiced defendant's case by referring to matters dehors the record. But, even if the acts and comments ascribed to plaintiff's counsel occurred as described, we are still left unconvinced that his conduct was so egregious as to justify a new trial. Indeed, on this record counsel's conduct appears singularly restrained.

## CONCLUSION

The grounds relied upon by the district court, whether considered separately or cumulatively, fail to support its order granting defendant's motion for a new trial.

The district court order of September 11, 1969, to the extent that it granted a new trial, will be vacated and the $50,000 verdict resulting from the first trial will be reinstated and judgment in favor of the plaintiff will be entered thereon as of the date of the jury verdict, April 17, 1969.

The judgment of the district court filed March 27, 1971, on the verdict entered in the second trial, will also be vacated.