Jerry **WILSON**

v.

**PHILADELPHIA DETENTION CENTER, et al.**

**Civil Action No. 94–6730.**

United States District Court, E.D. Pennsylvania.

Oct. 9, 1997.

---

Kaethe B. Schumacher, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Jerry Wilson.

Alan C. Ostrow, Thomas M. Zaleski, City of Philadelphia, Law Dept., Philadelphia, PA, for Carolyn Harrell-Reid, Gerald Nolan, George Peale.

Thomas M. Zaleski, City of Philadelphia, Law Dept., Philadelphia, PA, for Defendants.

## MEMORANDUM and OPINION

SHAPIRO, District Judge.

Plaintiff Jerry Wilson ("Wilson") brought this action against defendants, officials at the Philadelphia Detention Center (the "Center"), pursuant to 42 U.S.C. § 1983. Wilson alleged that Sergeant Adrian Christmas ("Sgt.Christmas"), Correctional Officer William Gill ("C.O.Gill"), Correctional Officer William Quigley ("C.O.Quigley") and Correctional Officer Gerard Nolan ("C.O.Nolan") used excessive force against him. He also claimed that Major George Peale ("Maj.Peale"), Lieutenant Bernadette MacDonald ("Lt.MacDonald") and social worker Carolyn Harrell-Reid ("Harrell-Reid"), all members of the prison's disciplinary review board, placed him in segregation without a hearing in violation of his procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

At trial, the jury returned a verdict on the excessive force charge in favor of Sgt. Christmas, C.O. Gill and C.O. Quigley, and against C.O. Nolan, and on the procedural due process claim in favor of Lt. MacDonald and against Maj. Peale and Harrell-Reid.

The jury awarded Wilson compensatory damages in the amount of $3,500 against C.O. Nolan, Maj. Peale and Harrell-Reid, jointly and severally. The jury awarded Wilson punitive damages against C.O. Nolan in the amount of $1, against Maj. Peale in the amount of $5,000 and against Harrell-Reid in the amount of $5,000.

Defendants Maj. Peale and Harrell-Reid filed a renewed motion for judgment as a matter of law, for a new trial or for remittitur. Defendant C.O. Nolan has filed a renewed motion for judgment as a matter of law or for a new trial. For the reasons stated below, their motions will be denied.

### FACTS

Wilson was a federal prisoner convicted of drug and weapons violations. He was housed in Section 304 of G-Dorm at the Center while awaiting sentencing. Wilson shared a cell with Paul Murphy ("Murphy"). See N.T. (7/8/97) at 114-15. On August 7, 1994, there was a "shakedown"[1] of Section 304 of G-Dorm; inmates' property was scattered about the Section. See id. at 116. The prison authorities had put Wilson's legal

---

**1.** A "shakedown" is an inspection of inmates' cells that prison guards conduct periodically in search of contraband. See N.T. (7/8/97) at 115; N.T. (7/9/97) at 23.

mail, photographs and other personal effects on Murphy's bed. Murphy reacted violently to the presence of Wilson's effects on his bed, and a fight ensued. *See id.* at 117–18.

Several correctional officers, including Sgt. Christmas, C.O. Gill and C.O. Quigley, went to Section 304 to restore order. C.O. Gill and C.O. Quigley separated Wilson and Murphy. Sgt. Christmas then ordered the officers to remove Wilson from the area. *See id.* at 124–25. Sgt. Christmas, C.O. Gill and C.O. Quigley testified Wilson refused to leave his cell area. See N.T. (7/9/97) at 28–29, 55–59, 80. Wilson denied resisting the officers and stated he was only trying to safeguard his personal property before leaving. *See* N.T. (7/8/97) at 122–25.

When the officers removed Wilson from his cell, C.O. Nolan, waiting in the hallway, handcuffed Wilson and led him out of the Section. C.O. Nolan punched Wilson twice in the back with his fist. *See id.* at 133–35. C.O. Nolan led Wilson to a temporary holding area known as "the bench." *See* N.T. (7/9/97) at 100–01. Wilson remained there for over an hour before he was taken to the medical wing of the Center. *See* N.T. (7/8/97) at 137–38.

Shortly thereafter, Lt. MacDonald ordered that Wilson be placed in segregation on "B" block, pending a disciplinary hearing. *See* N.T. (7/9/97) at 8. Prison authorities charged Wilson with four infractions: 1) fighting with an inmate named Kareem Darby ("Darby");[2] 2) disobeying an order; 3) threatening another inmate; and 4) disturbing other inmates/correctional officers.

The next day, Lieutenant Mary Padilla ("Lt.Padilla") reviewed the charges against Wilson and kept him in segregation; Lt. Padilla described this detention as "punitive segregation." N.T. (7/8/97) at 180. Lt. Padilla gave Wilson notification of the charges filed against him.

Maj. Peale admitted prison regulations required a disciplinary hearing for inmates charged with prison infractions within three days after the charges were filed, unless the prisoner was unavailable, requested a continuance or the incident occurred on the day prior to a weekend.[3] *See* N.T. (7/9/97) at 167–70.

Defendants testified at trial that Wilson appeared before a three-person disciplinary committee on August 10, 1997, within the three-day period. Darby's disciplinary hearing scheduled for August 10, 1994, was continued because he was still hospitalized, and Maj. Peale assumed that Wilson must have had a hearing on the same day that was continued for the same reason. *See id.* at 153. There was no documentation of this alleged hearing, although there were records of Wilson's subsequent hearings. *See id.* at 152, 157–58, 162–63.

The board held a disciplinary hearing for Murphy, the inmate with whom Wilson fought, on August 10, 1994. The board dismissed the charges against Murphy and released him from segregation the same day. The board should have been aware at that point that Wilson fought with Murphy, not Darby.

Wilson testified the disciplinary board did not see him until August 12, 1994. *See* N.T. (7/8/97) at 173. Neither Maj. Peale nor Harrell–Reid acknowledged the prison's violation of the three-day rule at the August 12th hearing. Maj. Peale chaired the disciplinary hearings, and he testified it was his responsibility to "make sure that the hearing is run properly" and scheduled within the three-day period. *See* N.T. (7/9/97) at 11–12. Harrell–Reid testified that her duty as a member of the disciplinary board was to "point out any inconsistencies" with procedure, such as when "a person hasn't had their hearing on a timely basis." *Id.* at 9–10.

**2.** Sgt. Christmas erroneously reported that Wilson had been fighting with Darby, rather than Murphy. *See* N.T. (7/9/97) at 88–90.

**3.** Maj. Peale initially testified that the weekend exception to the three-day rule applied to Wilson because the fighting incident took place on the day prior to a weekend. *See* N.T. (7/9/97) at

152–53. The court took judicial notice of the fact that August 7, 1994, was a Sunday. *See id.* at 167. Maj. Peale then admitted that the weekend exception did not apply. *See id.* at 168. Maj. Peale also admitted that neither of the other two exceptions to the three-day rule applied in Wilson's case. *See id.* at 168, 170.

At the hearing on August 12, 1994, Wilson admitted to fighting Murphy, but denied fighting Darby; he also entered a plea of not guilty to the other three charges. *See* N.T. (7/8/97) at 148. No witnesses testified, and the disciplinary board neither accepted his guilty plea on the fighting charge nor made any other findings of guilt. *See id.* at 148–49. The board continued the hearing and returned Wilson to segregation without explanation. *See id.* at 149.

Wilson was brought up from segregation on "B" block to "the bench" on August 15th for another hearing before the board. Wilson sat outside the hearing room; he never went inside. *See id.* at 149–50. After a few minutes, the correctional officer informed him the hearing had been continued and led him back to segregation on "B" block. *See id.* at 150. Maj. Peale testified the hearing was continued because Darby was still hospitalized. *See* N.T. (7/9/97) at 155.

Wilson had his last hearing before the disciplinary board on August 17, 1994. The board found Wilson "not guilty" on all four counts, including the fighting charge.[4] Later that night Wilson returned to general prison population. *See* N.T. (7/8/97) at 152–53.

Trial commenced on July 7, 1997. Defendants' motions for judgment as a matter of law at the close of plaintiff's case and at the close of all the evidence were denied.

## DISCUSSION

### I. Standard of Review for Post–Trial Motions

#### A. Judgment as a Matter of Law

Upon renewed motion for judgment as a matter of law, the Federal Rules of Civil Procedure permit the court to: "(A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law." Fed.R.Civ.P. 50(b)(1).[5]

Judgment as a matter of law may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury" to find in favor of the non-moving party. Fed.R.Civ.P. 50(a). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find for that party." *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir.1993) (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir.1978)).

■ The court must view the evidence in the light most favorable to the non-moving party, and " 'every fair and reasonable inference' " must be drawn in that party's favor. *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir.1995), *cert. denied*, 516 U.S. 1146, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)); *see Keith v. Truck Stops Corp.*, 909 F.2d 743, 745 (3d Cir.1990). "A jury verdict can be displaced by judgment as a matter of law only if 'the record is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief.' " *Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc.*, 862 F.Supp. 1361, 1364 (E.D.Pa.1994) (quoting *Dawson v. Chrysler Corp.*, 630 F.2d 950, 959 (3d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)), *modified*, 63 F.3d 1267 (3d Cir.1995), *cert. denied*, 516 U.S. 1172, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996); *see Parkway Garage Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir.1993) (citations omitted).

4. Defendants testified the board cleared Wilson on all counts because he had been charged with fighting the wrong inmate (i.e., Darby), although it is not clear why that procedural infirmity would have tainted the other three charges. *See* N.T. (7/9/97) at 155, 194.

5. The Rule provides in relevant part:
If for any reason the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law.... Fed.R.Civ.P. 50(b)(1).

Defendants Maj. Peale and Harrell–Reid move for judgment as a matter of law on the ground that no reasonable jury could have concluded from the evidence presented at trial that they were liable for violating Wilson's procedural due process rights by placing him in segregation without the benefit of a disciplinary hearing.[6] Defendants Maj. Peale, Harrell–Reid and C.O. Nolan move for judgment as a matter of law on the ground that the award of punitive damages was improper and unsupported by the evidence.

### B. Motion for a New Trial

 A court can grant a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59(a) "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a)(1). A new trial may be granted where "the verdict is contrary to the great weight of the evidence." *Roebuck v. Drexel University*, 852 F.2d 715, 735 (3d Cir.1988). A new trial also is appropriate if the trial court erred on a matter of law. *See Klein v. Hollings*, 992 F.2d 1285, 1289–90 (3d Cir.1993).

 The decision to grant or deny a motion for a new trial "is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir.1992); *see Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). However, the court's discretion is more limited when granting a new trial because the jury's verdict is against the weight of the evidence. *See Hourston v. Harvlan, Inc.*, 457 F.2d 1105, 1107 (3d Cir.1972); *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). A new trial "cannot be granted . . . merely because the court would have

weighed the evidence differently and reached a different conclusion." *Markovich v. Bell Helicopter Textron, Inc.*, 805 F.Supp. 1231, 1235 (E.D.Pa.), *aff'd*, 977 F.2d 568 (3d Cir. 1992).

 A court analyzing a motion for a new trial need not view the evidence in the light most favorable to the verdict winner. *See Magee v. General Motors Corp.*, 213 F.2d 899, 900 (3d Cir.1954). If the court finds the verdict is against the great weight of the evidence, or the amount of the verdict is excessive and "shocks the conscience" of the court, the court may grant a new trial. *See Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991); *New Market Inv. Corp. v. Fireman's Fund Ins. Co.*, .774 F.Supp. 909, 917 (E.D.Pa.1991).

Defendants Maj. Peale and Harrell–Reid move for a new trial on the ground that the jury's verdict of liability against them is against the great weight of the evidence. They also move for a new trial on the ground that the award of punitive damages was unsupported by the evidence and the punitive damages are excessive. Alternatively, they seek a reduction of the punitive damages.

Defendant C.O. Nolan moves for a new trial on the ground that the award of punitive damages against him was not supported by the evidence introduced at trial.[7] C.O. Nolan raises two additional grounds for a new trial: 1) the verdict sheet submitted to the jury contained only one entry for compensatory damages against all defendants on both of Wilson's causes of action, so if the court grants Maj. Peale's and Harrell–Reid's motion for judgment as a matter of law, it must afford C.O. Nolan a new trial to determine both his liability and individual damages; and 2) the court erred in denying C.O. Nolan the opportunity to testify regarding his absence from the courtroom during the trial.[8]

---

6. Defendant C.O. Nolan does not move for judgment as a matter of law on the issue of liability; apparently he concedes that the jury's decision to return a verdict against him and in favor of Wilson on the excessive force claim was not unreasonable.

7. C.O. Nolan does not argue that the jury's award of $1 in punitive damages was excessive.

8. C.O. Nolan does not argue that he is entitled to a new trial on the grounds that the jury's verdict against him on the excessive force claim was unsupported by the evidence.

## II. Wilson's Procedural Due Process Claim

Wilson raised a claim under 42 U.S.C. § 1983 [9] for violation of due process protected by the Fifth [10] and Fourteenth [11] Amendments. He alleged that Maj. Peale and Harrell–Reid impermissibly punished him without a hearing while he was a federal convict housed at the Center and awaiting sentencing. Wilson argued that no emergency or legitimate penological objectives warranted his placement in segregation for ten days without a hearing. The jury returned a verdict against Maj. Peale and Harrell–Reid on this count.

Maj. Peale and Harrell–Reid, seeking judgment as a matter of law or a new trial, argue that Wilson did not present sufficient evidence to permit a reasonable jury to find them liable for violating Wilson's procedural due process rights.

In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held governmental "punishment of the detainee" is impermissible. *Id.* at 535, 99 S.Ct. at 1871. Not every governmental restriction on a detainee's freedom amounts to impermissible "punishment." "Loss of freedom of choice and privacy are inherent incidents of confinement" in prison. *Id.* at 537, 99 S.Ct. at 1873.

The Court recognized "a distinction between punitive measures" and "regulatory restraints." *Id.* (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963); *Flemming v. Nestor,* 363 U.S. 603, 613–14, 80 S.Ct. 1367, 1373–74, 4 L.Ed.2d 1435 (1960)). A detainee must show the prison officials imposed a punitive sanction on him in order to establish a due process violation.

"A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.,* 441 U.S. at 538, 99 S.Ct. at 1873. "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. at 567–68); *see Cobb v. Aytch,* 643 F.2d 946, 962 (3d Cir.1981).

■ If Maj. Peale's and Harrell–Reid's decision to hold Wilson in segregation without a hearing for ten days in violation of the Center's three-day rule was "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.,* 441 U.S. at 539, 99 S.Ct. at 1874. Legitimate penological goals include "'maintaining institutional security and preserving internal order.'" *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1068 (3d Cir. 1991) (quoting *Bell,* 441 U.S. at 538, 99 S.Ct. at 1874), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). Courts cannot impose their own ideas of "how best to operate a detention facility." *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874.

■ "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874; *see Union County Jail Inmates v. Di Buono,* 713 F.2d 984, 991 (3d Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). Confining a detainee "in such a manner as to cause [him] to endure genuine privations and hard-

---

9. The statute provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 42 U.S.C. § 1983.

10. The Fifth Amendment, applicable to the federal government and those acting on behalf of the federal government, states that no person shall "be deprived of life, liberty or property, without due process of law." U.S. Const. amend V.

11. The Fourteenth Amendment provides that no "State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV.

ships over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." *Bell*, 441 U.S. at 542, 99 S.Ct. at 1876.

Defendants Maj. Peale and Harrell–Reid argue that the *Bell* standard should not apply to Wilson, who was a convicted prisoner, not a pre-trial detainee. *See* Defs.' Post–Trial Mot. at 8. They did not make this argument in their Rule 50 motions at trial but relied on *Bell. See* N.T. (7/9/97) at 14–16.

▆▆▆ "The Rule 50(b) motion may consider only specific grounds asserted in the motion for a directed verdict." *Orlando v. Billcon Int'l, Inc.*, 822 F.2d 1294, 1298 (3d Cir.1987); *see Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 814 (3d Cir.1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986); *Abraham v. Pekarski*, 728 F.2d 167, 172 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Mallick v. International Bhd. of Elec. Workers*, 644 F.2d 228, 233–34 (3d Cir.1981); *Wall v. United States*, 592 F.2d 154, 159–60 (3d Cir.1979); *Lowenstein v. Pepsi–Cola Bottling Co.*, 536 F.2d 9, 10–11 (3d Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976). Maj. Peale and Harrell–Reid have waived the right to argue that the *Bell* standard does not apply to Wilson.[12]

▆▆▆ The facts presented at trial revealed Maj. Peale and Harrell–Reid ordered Wilson held in segregation for a total of ten days; defendants did not deny that. *See* N.T. (7/9/97) at 13. Defendants presented evidence that Wilson initially was placed in segregation to ensure the safety and security of the prison. *See id.* at 137–38. That initial decision does not explain why it was "administratively necessary" to keep Wilson in segregation for ten days. The jury could have

concluded that Maj. Peale's and Harrell–Reid's decision to keep Wilson in segregation was not based on any penological concern but was arbitrary; in fact, Lt. Padilla testified that Wilson was sent to segregation as a "punitive" measure. *See* N.T. (7/8/97) at 180. The jury could have found this was evidence of an "expressed intent to punish on the part of detention facility officials." *Bell*, 441 U.S. at 538, 99 S.Ct. at 1873.

Maj. Peale and Harrell–Reid, members of the disciplinary board, were responsible for assuring that prison procedures were followed and there were no irregularities. *See* N.T. (7/9/97) at 10–12. Neither one prevented Wilson's being held in segregation for ten days without a determination of guilt on any of the four charges. The Center's records described Wilson's detention as "punitive segregation" for the ten days. *See id.* at 187. The jury saw photographs of the segregation cell on "B" block where Wilson was housed for twenty-two hours per day as evidence of its punitive character.

Maj. Peale and Harrell–Reid presented evidence they continued Wilson's hearing for ten days because Darby was hospitalized and they wanted to assure Wilson a fair hearing. *See id.* at 155. But they also admitted the disciplinary board cleared Murphy, the inmate with whom Wilson actually fought, on August 10, 1994 (within the three-day period). The jury could have concluded the board should have also released Wilson then.

Maj. Peale's testimony throughout the trial was inconsistent: he said prison documents referred to a hearing for Wilson on August 10th, then later admitted that the records did not report a hearing until August 12th, *see id.* at 150, 152; he initially denied the existence of a tape recording of Wilson's August 12th hearing, even when confronted with a transcript of his deposition in which he ad-

---

**12.** Even if Maj. Peale and Harrell–Reid had not waived their right to challenge the applicability of Bell, the Court of Appeals has held convicted prisoners not yet sentenced are to be treated like pre-trial detainees, rather than like convicted and sentenced prisoners. *See Cobb*, 643 F.2d at 962 (rejecting a distinction between pre-trial detainees and unsentenced convicts, because the "right to remain at liberty continues until a court pronounces a judgment of sentence"); *see also*

*Bell*, 441 U.S. at 536 n. 16, 99 S.Ct. at 1872, n. 16 (stating that the Due Process Clause applies to unsentenced inmates). Maj. Peale's and Harrell–Reid's rejection of *Bell* and reliance on *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), is inappropriate; in *Sandin*, the inmate had been both convicted and sentenced. *See id.*, 515 U.S. at 474–75, 115 S.Ct. at 2294–95.

mitted to its existence, *see id.* at 161–62. The jury may have discredited Maj. Peale's testimony altogether. As defense counsel stated to the jury in his closing argument, "if you think [a witness] is lying to you—if you think ... he's trying to pull the wool over your eyes—you don't have to believe anything he says." N.T. (7/10/97) at 50–51.

Considering the evidence in the light most favorable to Wilson, the court cannot say "there is no legally sufficient evidentiary basis for a reasonable jury" to have found in Wilson's favor. Fed.R.Civ.P. 50(a); *see Dawson,* 630 F.2d at 959. Judgment as a matter of law in favor of Maj. Peale and Harrell–Reid on Wilson's procedural due process claim will be denied. Neither will the court grant a new trial on Wilson's procedural due process claim. A new trial is appropriate only where "the verdict is contrary to the great weight of the evidence." *Roebuck,* 852 F.2d at 735. Defendants Maj. Peale and Harrell–Reid have not established entitlement to a new trial. *See Hourston,* 457 F.2d at 1107.

### III. Award of Punitive Damages Against Maj. Peale, Harrell–Reid and C.O. Nolan

Maj. Peale, Harrell–Reid and C.O. Nolan seek judgment as a matter of law or a new trial based on the jury's decision to award punitive damages; they argue the evidence does not support the jury's award of punitive damages in the amount of $5,000 against Maj. Peale, $5,000 against Harrell–Reid and $1 against C.O. Nolan.

A court can award punitive damages in a § 1983 case in order to punish defendants and deter others from committing similar conduct in the future. *See Smith v. Wade,* 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983). Punitive damages are appropriate if the defendants acted in an intentional manner or were motivated by an evil intent, *see id.* at 56, 103 S.Ct. at 1640, but evil intent is not required; courts also can award punitive damages if the defendants acted with "reckless or careless indifference to the federally protected rights of others." *Id.; see Keenan v. City of Phila.,* 983 F.2d 459, 470 (3d Cir.1992) (" 'reckless or

callous disregard' ") (quoting *Bennis v. Gable,* 823 F.2d 723, 734 (3d Cir.1987)); *Savarese v. Agriss,* 883 F.2d 1194, 1204 (3d Cir.1989) ("reckless or callous" conduct).

Punitive damages represent a limited remedy " 'to be reserved for special circumstances.' " *Keenan,* 983 F.2d at 470 (quoting *Savarese,* 883 F.2d at 1205). "[D]espite its utility as a deterrent, the punitive damage remedy must be reserved, we think, for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *Cochetti v. Desmond,* 572 F.2d 102, 105–06 (3d Cir.1978).

This case did not involve a *de minimis* violation of Wilson's procedural due process rights; he was confined to segregation in "B" block for ten days before receiving the hearing mandated by prison regulations. The jury saw photographs of the "B" block cell where Wilson was kept; the jury reasonably could have concluded the small cell with a shared toilet and sink where Wilson was kept for twenty-two hours per day caused Wilson to suffer.

Maj. Peale and Harrell–Reid testified they detained Wilson in segregation for the safety of the institution. *See* N.T. (7/9/97) at 155. They also testified one of their duties as members of the disciplinary board was to ensure prison procedures were followed. *See id.* at 9–12. The jury reasonably could have concluded that Maj. Peale and Harrell–Reid were "reckless" in depriving Wilson of a hearing for ten days without any express finding of guilt or continuing concern for institutional safety. *See Wade,* 461 U.S. at 56, 103 S.Ct. at 1640; *Keenan,* 983 F.2d at 470. The jury also could have concluded that Maj. Peale and Harrell–Reid intentionally placed Wilson in segregation, based on the classification of his detention as "punitive segregation" by Lt. Padilla. N.T. (7/8/97) at 180. The court will not set aside the punitive damage award or order a new trial on punitive damages. *See Roebuck,* 852 F.2d at 735; *Dawson,* 630 F.2d at 959.

## IV. Remittitur

 Maj. Peale and Harrell–Reid seek remittitur on the $5,000 in punitive damages assessed against each of them. "[W]here the verdict is so large as to shock the conscience of the court ... [the court may] order[ ] plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur [is] refused, to submit to a new trial." *Kazan v. Wolinski,* 721 F.2d 911, 914 (3d Cir.1983) (citing *Perzeproski v. American President Lines, Ltd.,* 319 F.Supp. 1329, 1330 (E.D.Pa. 1970)). The verdict must be " 'so grossly excessive as to shock the judicial conscience.' " *Keenan,* 983 F.2d at 472 (quoting *Gumbs v. Pueblo Int'l Inc.,* 823 F.2d 768, 771 (3d Cir.1987)).

 ▪The award of $5,000 in punitive damages against Maj. Peale and $5,000 against Harrell–Reid is not large enough to "shock the judicial conscience" of this court. *Id.* The evidence presented at trial established that Maj. Peale and Harrell–Reid recklessly, if not intentionally, kept Wilson in segregation for ten days before determining his innocence. The award of punitive damages was not "shocking, unfair or biased." *Frankel v. Heym,* 466 F.2d 1226, 1228 (3d Cir.1972). The court will not reduce the amount of punitive damages assessed against Maj. Peale and Harrell–Reid.

## V. Exclusion of C.O. Nolan's Testimony Concerning His Absence From Court

Defendant C.O. Nolan seeks a new trial on the grounds that the court erred in preventing him from testifying via trial deposition regarding his absence from court throughout the entire trial. He argues this error was prejudicial and warrants a new trial on both liability and damages.

The court notified C.O. Nolan by Order dated May 20, 1997, that Wilson's trial would begin on July 7, 1997. Defense counsel did not inform the court that C.O. Nolan would not attend the trial until the day voir dire began: July 7th. Defense counsel stated C.O. Nolan was attending training to become a deputy sheriff in Carlisle, Pennsylvania. *See* N.T. (7/7/97) at 13.

Defense counsel requested permission to read C.O. Nolan's discovery deposition into the record at trial, in lieu of C.O. Nolan's live testimony, pursuant to Federal Rule of Civil Procedure 32(a)(3)(B) (allowing the use of depositions at trial if the witness is more than 100 miles away).[13]

Wilson's counsel objected to the use of C.O. Nolan's discovery deposition at trial because C.O. Nolan had "procured" his own absence. The court agreed. *See* N.T. (7/7/97) at 16–18. The court agreed to allow defense counsel to present C.O. Nolan's testimony through a trial deposition as an accommodation to C.O. Nolan, even though Rule 32(a)(3) did not require it.

 When counsel took C.O. Nolan's trial deposition, defense counsel asked C.O. Nolan about the reasons for his absence from trial. Defense counsel later tried to read those portions of the deposition into the trial record. Wilson's counsel objected, and the court sustained the objection. *See* N.T. (7/9/97) at 95–96. The court, explaining to the jury the reasons for offering testimony via a deposition rather than live testimony, stated that "if for some reason, a person can't be present and is excused by the Court or unavailable, because they are too far away ... we permit their testimony to be read by deposition, as if it had been here." *Id.* at 96.

C.O. Nolan voluntarily made himself unavailable; he was not compelled to be absent from the courtroom during the trial. C.O. Nolan had ample opportunity to inform the court of the conflict between the trial date and his deputy sheriff training in Carlisle. Evidentiary rulings are left to the sound discretion of the trial judge. *See, e.g., In re Paoli R.R. Yard PCB Litig.,* 113 F.3d 444, 453 (3d Cir.1997); *Barker v. Deere & Co.,* 60 F.3d 158, 161 (3d Cir.1995); *Glass v. Phila-*

---

13. Rule 32(a)(3) provides:

 The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition. ...

 Fed.R.Civ.P. 32(a)(3).

*delphia Electric Co.,* 34 F.3d 188, 191 (3d Cir.1994) (citing *In re Japanese Electronic Products,* 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Pfeiffer v. Marion Center Area Sch. Dist.,* 917 F.2d 779, 781–82 (3d Cir.1990). The court did not have to allow C.O. Nolan to testify at all via deposition; there was no error in limiting the scope of his deposition testimony at trial.

## VI. The Special Verdict Sheet

C.O. Nolan argues the court erred in using a special verdict form that did not allow the jury to allocate compensatory damages among defendants on Wilson's two separate causes of action. C.O. Nolan asserts the court must grant him a new trial on both liability and damages, if the court enters judgment as a matter of law in favor of defendants Maj. Peale and Harrell–Reid. Because the court is not entering judgment as a matter of law in favor of Maj. Peale and Harrell–Reid, it need not address this argument.

### CONCLUSION

Defendants Maj. Peale, Harrell–Reid and C.O. Nolan have not carried their burden of establishing they are entitled to judgment as a matter of law on the jury's verdict on liability or punitive damages; they have not convinced the court that the jury's verdict was so "contrary to the great weight of the evidence" that a new trial is appropriate. *See Roebuck,* 852 F.2d at 735. The award of punitive damages was not "shocking" enough to justify remittitur. *See Keenan,* 983 F.2d at 472. Defendant C.O. Nolan is not entitled to a new trial based on the court's exclusion of the portion of his trial deposition explaining his absence from court.

An appropriate order follows.

### ORDER

AND NOW, this 9th day of October, 1997, upon consideration of defendants Maj. George Peale's, Carolyn Harrell–Reid's and C.O. Gerard Nolan's renewed motion for judgment as a matter of law, for a new trial and/or for remittitur, plaintiff Jerry Wilson's response thereto, and in accordance with the attached Memorandum, it is hereby **ORDERED** that:

The renewed motion for judgment as a matter of law, for a new trial and/or for remittitur filed by defendants Maj. George Peale, Carolyn Harrell–Reid and C.O. Gerard Nolan is **DENIED.**