Brian C. DUFFY

v.

COUNTY OF BUCKS, Pennsylvania
Court of Common Pleas Adult
Probation & Parole Dept.,

County of Bucks, Pennsylvania
Sheriff's Office,

Ventura Vasquez, individually & in his
official capacity as an Adult
Probation Officer,

Jane Doe, individually & in her official
capacity as an employee of the Bucks
County Sheriff's Office,

John Does 1 through 10, individually &
in their official capacities as Bucks
County Sheriff's Officers.

Civil Action No. 97–6152.

United States District Court,
E.D. Pennsylvania.

April 28, 1998.

---

Brian P. McCafferty, Provost & Umphrey, L.L.P., Norristown, PA, for Plaintiff.

James A. Downey, III, Begley, Carlin & Mandio, Langhorne, PA, for Defendants.

### *MEMORANDUM and ORDER*

SHAPIRO, District Judge.

Plaintiff Brian C. Duffy ("Duffy"), alleging due process violations under the Fifth and Fourteenth Amendments, filed this action under 42 U.S.C. § 1983 against defendants the Bucks County Adult Probation and Parole Department ("Probation Dept."), probation officer Ventura Vasquez ("Vasquez"), the Bucks County Sheriff's Office ("Sheriff's Office"), Jane Doe, an unidentified employee of the Sheriff's Office and ten John Does, unidentified officers in the Sheriff's Office. The parties agree that Jane Doe and the John Does were actually employees of the Bucks County Correctional Facility (the "Facility"), not the Sheriff's Office.

Defense counsel has provided the real names of Jane Doe and the John Does: Jane Doe is Charmaine Henderson ("Henderson"), an employee of the Facility; the John Does are Officer Mark Nagorski ("Off. Nagorski"), a correctional officer who booked Duffy upon admission to the Facility; Officers Terry Jackson ("Off. Jackson"), Gerrity ("Off. Gerrity"), Christopher Greene ("Off. Greene") and David Hagerity III ("Off. Hagerity"), correctional officers on duty September 30, 1995; Officers David Godin ("Off. Godin"), John Keim ("Off. Keim"), Eugene Ledger ("Off. Ledger") and Ronald Feliciano ("Off. Feliciano"), correctional officers on duty October 1, 1995; and Officers Joseph Cavanaugh ("Off. Cavanaugh") and Colin Burns ("Off. Burns"),

**574**

correctional officers on duty October 2, 1995 (collectively the "correctional officers").[1]

Defendants have moved to dismiss Duffy's Amended Complaint. For the reasons stated below, defendants' motion will be granted in part and denied in part.

### BACKGROUND

Duffy resides in Trevose, a municipality in Bucks County Pennsylvania. At some time in the past five years, Duffy pled guilty to a criminal misdemeanor and was sentenced by the Bucks County Court of Common Pleas to forty-eight hours confinement in the Facility and ordered to pay court costs and fines. Duffy's sentence did not include a term of probation. (Compl.¶ 10).[2]

In February, 1995, Vasquez visited Duffy at home and accused Duffy of "violating his probation" by failing to report to Vasquez. (*Id.* ¶ 11). Duffy informed Vasquez that he had not been placed on probation. The documents concerning the probation violation referred to a Brian Duffy with a different birth date and Social Security number than that of plaintiff Duffy. Duffy showed Vasquez his driver's license with a birth date different than that of the Duffy Vasquez was seeking. (*Id.* ¶ 12).

Vasquez did not report the confusion between plaintiff Duffy and the other Brian Duffy to the Probation Dept. or correct the Probation Dept.'s computer records to reflect that plaintiff Duffy was not violating any term of probation. (*Id.* ¶¶ 13, 14). Duffy alleges the Probation Dept.'s "policies or customs regarding the maintenance of its computer system ... did not adequately provide for the correction or elimination of false or inaccurate information." (*Id.* ¶ 14).

Despite the information provided by plaintiff Duffy, Vasquez filed a Praecipe for a Probation/Parole Violation Hearing on June 6, 1995. (*Id.* ¶ 15). Vasquez caused a Bucks County Court of Common Pleas judge to issue a bench warrant for plaintiff Duffy's arrest in July, 1995. (*Id.* ¶ 17).

On September 29, 1995, Duffy tendered a timely child support payment to the Philadelphia County Court of Common Pleas. A law enforcement officer, running a routine background check, learned of the Bucks County Court of Common Pleas bench warrant. The Philadelphia law enforcement officer contacted the Bucks County Sheriff's Office to inform them of Duffy's presence; an employee of the Bucks County Sheriff's Office asked the Philadelphia officer to hold Duffy for arrest. (*Id.* ¶ 18).

Duffy was arrested by Bucks County Sheriff's officers and transported to the Facility at approximately 2:00 p.m. on Friday, September 29, 1995. (*Id.* ¶¶ 19, 30). Duffy was fingerprinted; he provided the Sheriff's Office with identification bearing his birth date and Social Security number. Henderson, a Correctional Facility "counselor," informed Duffy his record did not reveal any reason for his incarceration, but he would be imprisoned anyhow. (*Id.* ¶ 20). Henderson refused to notify superiors that Duffy should not be detained. (*Id.* ¶ 21).

Duffy was detained at the Facility through Monday, October 2, 1995. (*Id.* ¶¶ 19, 30). Duffy alleges "defendants"' policies or custom did not require a court hearing between Friday afternoon and Monday, or, alternatively, the correctional officers improperly detained Duffy until Monday because they were deliberately indifferent and "did not want to delay their own weekend activities by preparing for and participating in a hearing on Friday afternoon." (*Id.* ¶ 30).

During Duffy's four days of confinement, he was subjected to strip searches "at least once on every day" by the correctional officers on duty. The strip searches were "for no apparent reason and unprovoked by any action taken by Plaintiff Duffy which would have justified repeated strip searches." (*Id.* ¶ 22). The correctional officers conducted Duffy's strip searches either in violation of

**1.** Defense counsel formally entered his appearance on behalf of Jane Doe and John Does 1 through 10. During a telephone conference with the court on April 9, 1998, counsel conceded that he had accepted service on behalf of Jane Doe and the John Does, so their names may be substituted.

**2.** All citations to the Complaint refer to the Amended Complaint filed on February 25, 1998.

official policies and customs or, alternatively, pursuant to official policies or customs which permit "excessive strip searches for no apparent reason and justified by no countervailing public policy or necessity." (*Id.* ¶ 24).

On October 2, 1995, Duffy attended a hearing in the Bucks County Court of Common Pleas. The judge found "no basis for arresting and imprisoning Plaintiff Duffy," rescinded the bench warrant and ordered Duffy's immediate release from incarceration. (*Id.* ¶ 25). However, Facility personnel returned Duffy to the Facility, incarcerated him for several hours and subjected him to an additional strip search. (*Id.* ¶ 26).

Duffy filed a *pro se* Complaint on October 1, 1997. Process was served on January 23, 1998. Duffy obtained counsel and filed an Amended Complaint on February 25, 1998. The Amended Complaint alleges a due process[3] violation under the Fifth and Fourteenth Amendments because defendants: 1) falsely imprisoned plaintiff; 2) deprived plaintiff of a timely court hearing after his arrest; and 3) subjected plaintiff to numerous strip searches for no apparent reason.

Defendants move to dismiss the Amended Complaint because: 1) there is no respondeat superior liability under § 1983; 2) Duffy has not alleged any custom or policy of the Probation Dept. or Sheriff's Office that caused his injuries; 3) Vasquez is entitled to qualified immunity; and 4) Duffy failed to commence this action within the statute of limitations.

## DISCUSSION

### I. Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665–66 (3d Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); *see Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989). The court must decide whether "relief could be granted on any set of facts which could be proved." *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). A motion to dismiss may be granted only if the court finds the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### II. False Imprisonment Under § 1983

To maintain an action under § 1983, a plaintiff must allege defendants deprived him of a federal right while acting under color of state law. *See* 42 U.S.C. § 1983.[4] "Section 1983 focuses on misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Davidson v. O'Lone,* 752 F.2d 817, 826 (3d Cir.1984), *aff'd,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). State action exists where a defendant's "official character is such as to lend the weight of the State to his decisions." *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Here the defendants are a County Sheriff's Office, Probation Dept., its employees and Facility employees. Defendants derive their authority from state law and are state actors.

Duffy alleges his incarceration violated the Due Process Clauses of both the

---

3. Duffy's Complaint does not specify whether he alleges violations of substantive or procedural due process, and none of the parties found it necessary to discuss the law as to either. The court will analyze Duffy's claims under both substantive and procedural due process.

4. 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges,. or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Fifth[5] and Fourteenth Amendments.[6] The Fifth Amendment only applies to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Bartkus v. Illinois,* 359 U.S. 121, 158–59, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Brock v. North Carolina,* 344 U.S. 424, 426, 73 S.Ct. 349, 97 L.Ed. 456 (1953); *In re Bankers Trust Co.,* 752 F.2d 874, 886 (3d Cir.1984); *Nguyen v. United States Catholic Conference,* 719 F.2d 52, 54 (3d Cir.1983). Duffy cannot recover on a § 1983 claim for violation of the Due Process Clause of the Fifth Amendment; that claim will be dismissed.

 The Fourteenth Amendment Due Process Clause protects against "abuse by a state official of his or her official position." *Davidson,* 752 F.2d at 826. Governmental conduct violates due process when it "shocks the conscience" of the court or is "arbitrary or irrational." *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Hurtado v. California,* 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *Giuffre v. Bissell,* 31 F.3d 1241, 1258 (3d Cir.1994).

 Not every breach of state law violates due process. *See Reich v. Beharry,* 883 F.2d 239, 242 (3d Cir.1989). " 'Violation of local law does not necessarily mean that federal rights have been invaded.' " *Paul v. Davis,* 424 U.S. 693, 699, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *see Davidson,* 752 F.2d at 823–24. " '[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause.' " *Smith v. Horn,* 120 F.3d 400, 414 (3d Cir.1997) (quoting *Johnson v. Rosemeyer,* 117 F.3d 104, 109 (3d Cir.1997)), *cert. denied sub nom., District Attorney of Bucks County v. Smith,* —— U.S. ——, 118 S.Ct. 1037, 140 L.Ed.2d 103 (1998). A plaintiff must allege an interest protected by the Due Process Clause.

 "The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir.1988); *see Groman v. Township of Manalapan,* 47 F.3d 628, 634 (3d Cir.1995). When probable cause existed for an arrest and the officer was not in violation of the Fourth Amendment, no substantive due process violation has occurred, even if the arrested individual was actually innocent. *See Ruehman v. Sheahan,* 34 F.3d 525, 528 (7th Cir.1994). Whether an officer had probable cause to believe an individual committed an offense is an objective test, based on the facts available to the officers at the moment of arrest. *See Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994).

"The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Patterson v. New York,* 432 U.S. 197, 208, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). "Just as '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner,' . . . false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." *Baker,* 443 U.S. at 146, 99 S.Ct. 2689.

"[A] sheriff executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145–46, 99 S.Ct. 2689; *see Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988); *Thompson v. Olson,* 798 F.2d 552, 556 (1st Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987).

---

**5.** The Fifth Amendment provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

**6.** The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law ."

Duffy, citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989), claims a § 1983 cause of action lies for wrongful incarceration. Sample was an inmate sentenced to a period of incarceration and then erroneously detained in prison for more than nine months after the date on which he was to be released. The Court of Appeals held that "imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." *Id.* at 1108. The Eighth Amendment only applies to "convicted criminal defendants subjected to punishment in the context of criminal proceedings." *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1076 (3d Cir.1997); *see Ingraham v. Wright*, 430 U.S. 651, 671–72 & n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *Sample* was decided on Eighth Amendment grounds, not the Due Process Clause, and is inapposite.

 Even though substantive due process has not been violated by a false arrest and incarceration pending a court hearing, because the officer had probable cause, procedural due process may be implicated. Individuals have a liberty interest in remaining free from state custody; there is a procedural due process right to a hearing before a neutral magistrate to assess the propriety of continued confinement. *See Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). But procedural due process is not violated by a three-day prehearing detention over the weekend. *See Baker*, 443 U.S. at 145, 99 S.Ct. 2689 (detention of three days over New Year's weekend did not violate due process).

## A. Henderson & Correctional Officers

Duffy claims Henderson, a counselor at the Correctional Facility, and the Facility correctional officers violated his due process rights when they arrested and detained him pending a court hearing. The Bucks County Sheriff's Office had a bench warrant for Duffy's arrest, issued by the Court of Common Pleas. The Sheriff's Office had not sought that arrest warrant; it was obtained by defendant Vasquez.

 Henderson and Officers Nagorski, Jackson, Gerrity, Greene, Hagerity, Godin, Keim, Ledger and Feliciano, who arrested and detained Duffy pending a hearing, were acting according to a facially valid warrant. They are "protected even though it turns out that the citizen is innocent." *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). The fact that Duffy made the officials aware of confusion over his identity does not make them liable, for they had no duty to take every step "to eliminate the possibility of convicting an innocent person." *Patterson*, 432 U.S. at 208, 97 S.Ct. 2319; *see Baker*, 443 at 145–46, 99 S.Ct. 2689. The correctional officers had no authority to disregard the bench warrant and release Duffy, because "it is up to the judicial system to decide whether a person is guilty or not guilty." *Alvarez v. Freiwald*, No. 92–1933, 1993 WL 542877, at *5 (E.D.Pa. Dec. 23, 1993). Defendants' motion to dismiss the substantive due process claim against Henderson and the correctional officers for Duffy's false arrest and detention will be granted. *See Washington v. City of Phila.*, No. 95–4737, 1997 WL 587356, at *5 (E.D.Pa. Sept. 10, 1997).

 Henderson and Officers Nagorski, Jackson, Gerrity, Greene, Hagerity, Godin, Keim, Ledger and Feliciano also did not violate Duffy's procedural due process rights by confining him for three days after his arrest. Duffy did not arrive at the Bucks County Facility until 2:00 on Friday afternoon. (Compl.¶ 19). He received a court hearing the following Monday. Detention for one weekend before a court hearing does not violate procedural due process. *See Baker*, 443 U.S. at 145, 99 S.Ct. 2689.

 Duffy also alleges he was returned to the Facility and re-incarcerated by Officers Cavanaugh and Burns for several hours after the Bucks County Court of Common Pleas judge ordered his release on October 2, 1995. (Compl.¶¶ 25–26). Continued incarceration in violation of a court order violates procedural due process. There is no allegation Henderson was involved in Duffy's second detention, so this claim will be dismissed as to her. Officers Nagorski, Jackson, Gerrity, Greene, Hagerity, Godin, Keim, Ledger

and Feliciano were also not involved, so this claim will be dismissed as to those defendants. The court will not dismiss Duffy's procedural due process claim against Officers Cavanaugh and Burns for the second detention in violation of a court order.

## B. Official Capacity Suits Against Facility Personnel

 Duffy has named Henderson and the correctional officers in their official as well as individual capacities. "Personal-capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Gregory v. Chehi,* 843 F.2d 111, 120 (3d Cir.1988); *see Monell v. Department of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Duffy has not named the Bucks County Correctional Facility as a defendant, but defense counsel stated that he represents the Facility as well as its officers. Therefore, Bucks County has received sufficient notice of Duffy's action to permit an official capacity suit to proceed.

 Henderson and the correctional officers can be liable in their official capacities to the same extent that Bucks County, their employer, could be liable. Local governments are "persons" under § 1983 and can be liable for the actions of their agents, *see Monell,* 436 U.S. at 690, 98 S.Ct. 2018, but there is no respondeat superior liability under § 1983. The County must have known of its agent's action and approved of it. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

 County liability is established only by proof that the County agency had an official policy or custom permitting or requiring its agent's action. *See McMillian v. Monroe County,* 520 U.S. 781, ——, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997); *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996) (quoting *Andrews v. City of Phila.,* 895 F.2d 1469, 1480 (3d Cir.1990)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1086, 137 L.Ed.2d 219 (1997).

 Duffy's official capacity claims against Henderson and the correctional officers must be analyzed as claims against Bucks County. *See Gregory,* 843 F.2d at 120. There are no allegations in his Complaint that the Facility had any policy or practice permitting its officers to strip-search or detain Duffy. Duffy would not be able to maintain an action against Bucks County without such allegations, so his official capacity claims against Henderson and the correctional officers fail; the official capacity claims against these defendants will be dismissed.

## C. Sheriff's Office

 The County of Bucks, Pennsylvania Sheriff's Office is not a suable entity and must be dismissed; the proper party would be the Bucks County Sheriff. *See Pino v. Baumeister,* No. 96–5233, 1997 WL 811011, at *1 (E.D.Pa. Dec. 23, 1997); *Talley v. Trautman,* No. 96–5190, 1997 WL 135705, at *2 (E.D.Pa. Mar. 13, 1997); *Ellis v. Philadelphia Police Dept.,* No. 96–6403, 1996 WL 683868, at *4 (E.D.Pa. Nov. 25, 1996); *Irvin v. Borough of Darby,* 937 F.Supp. 446, 450 (E.D.Pa.1996).

 Duffy originally thought the officers at the Facility were employed by the Sheriff, but they are employed by the Facility. The Sheriff cannot be liable for actions taken by employees of an unrelated agency over which he has no control. Each of the individual defendants, employees of Bucks County,

were named in their official capacities; any liability on their part will attach to Bucks County. No individual defendant is employed by the Sheriff, so Duffy's claims against the Sheriff's Office will be dismissed.[7]

### D. Vasquez

Duffy alleges Vasquez, knowing Duffy was not in violation of probation, requested the Bucks County Court of Common Pleas to issue a warrant for his arrest. Henderson and the correctional officers did not violate Duffy's substantive due process rights in detaining him, because they were acting under a valid arrest warrant, but Vasquez could not rely on the outstanding arrest warrant as presumptively valid, because he allegedly knew the contrary was true; "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

 Duffy has alleged that Vasquez intentionally sought the issuance of an arrest warrant for him even though Vasquez knew Duffy was not the individual wanted for violating probation. (Compl.¶¶ 15–16). While an individual has no substantive due process right to be free from a negligent wrongful arrest and detention based on probable cause, *see Baker,* 443 U.S. at 145, 99 S.Ct. 2689, an officer who knows an individual is innocent but "intentionally" and "with malice" causes others to arrest him can be liable for unconstitutional conduct. (Compl.¶¶ 15–16). Duffy has alleged a substantive due process claim against Vasquez. *See Dowling,* 855 F.2d at 141; *Cunnane v. Williams,* No. 91–5526, 1992 WL 151305, at *6 (E.D.Pa. June 18, 1992). The motion to dismiss this claim against Vasquez will be denied.

 Vasquez is not liable for any procedural due process violation by Officers Cavanaugh and Burns in detaining Duffy a second time. Vasquez had no role in Officers Cavanaugh and Burns' decision to return Duffy to custody after his release was ordered on October 2, 1995. The officers' conduct, allegedly intentional and motivated by malice, was an unforeseeable, intervening event.

 Duffy has sued Vasquez in both his official and individual capacities. The official capacity claim must be analyzed as if a claim against Bucks County. *See Graham,* 473 U.S. at 166, 105 S.Ct. 3099; *Gregory,* 843 F.2d at 120. County liability must be premised on an official policy or custom requiring or permitting Vasquez to act. Duffy has alleged County policy or custom "regarding the maintenance of its computer system" enabled Vasquez to obtain an arrest warrant for Duffy even though there was confusion concerning his identity. (Compl.¶ 14). That allegation is sufficient to state a claim against Vasquez in his official capacity.

### E. Probation Dept.

 The Probation Dept. is not a proper defendant under § 1983 because it has no legal identity separate from Bucks County; it is not a "person" under § 1983. *See Pino,* 1997 WL 811011, at *1; *Talley,* 1997 WL 135705, at *2; *Ellis,* 1996 WL 683868, at *4; *Irvin,* 937 F.Supp. at 450. The Probation Dept.'s motion to dismiss will be granted.

### III. Strip–Searches

 Duffy argues the correctional officers repeatedly strip-searched him while he was in the Facility even after ordered to release him, in violation of his substantive due process rights. "Loss of freedom of choice and privacy are inherent incidents of confinement" in prison. *Bell v. Wolfish,* 441 U.S. 520, 537, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

However, where loss of privacy is not warranted by institutional need, it may have constitutional protection. A strip search, regardless of how professionally and courteously conducted, is an embarrassing and humiliating experience. *See Boren v. Deland,* 958

---

**7.** Because none of the individual defendants are employed by the Bucks County Sheriff and the Sheriff cannot be held liable for their actions, the court need not decide whether the Sheriff is considered an agent of Bucks County or the Commonwealth for purposes of Eleventh Amendment immunity. *Compare McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), *with Morgan v. Rossi,* No. 96–1536, 1998 WL 175604 (E.D.Pa. Apr. 15, 1998).

F.2d 987, 988 n. 1 (10th Cir.1992); *Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982). "[S]trip searches involving the visual inspection of the anal and genital areas [are] demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Mary Beth G. v. Chicago,* 723 F.2d 1263, 1272 (7th Cir.1983) (full strip search of female non-dangerous misdemeanor offenders unreasonable).

■■■ Due process does not permit "punishment" of a pretrial detainee. *See Bell v. Wolfish,* 441 U.S. 520, 537 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (double-bunking did not constitute "punishment"). The issue is whether the intrusion was "imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.,* 441 U.S. at 538, 99 S.Ct. 1861. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether there is an alternative purpose to which the intrusion may rationally be connected, and whether it appears excessive in relation to the alternative purpose. *See id.; Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Cobb v. Aytch,* 643 F.2d 946, 962 (3d Cir.1981).

Legitimate penological goals include maintaining institutional security and preserving internal order. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1068 (3d Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992); *Wilson v. Philadelphia Detention Ctr.,* 986 F.Supp. 282, 288 (E.D.Pa. 1997).

Prevention of the introduction of weapons or other contraband into the prison is an extremely important government interest. *See Newkirk v. Sheers,* 834 F.Supp. 772, 787 (E.D.Pa.1993); *see also Bell,* 441 U.S. at 559, 99 S.Ct. 1861 (prevention of smuggling of money, drugs, weapons, and other contraband is significant and legitimate prison security interest).

Policies permitting strip-searches of all inmates not based on concerns for institutional security or the inmate's criminal history have been held unconstitutional. *See Fuller v.*

*M.G. Jewelry,* 950 F.2d 1437, 1446 (9th Cir. 1991); *Masters v. Crouch,* 872 F.2d 1248, 1255 (6th Cir.), *cert. denied sub nom., Frey v. Masters,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989); *Walsh v. Franco,* 849 F.2d 66, 68 (2d Cir.1988); *Jones v. Edwards,* 770 F.2d 739, 741–42 (8th Cir.1985); *Stewart v. Lubbock County,* 767 F.2d 153, 156–57 (5th Cir.1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Hill v. Bogans,* 735 F.2d 391, 394–95 (10th Cir.1984); *Mary Beth G.,* 723 F.2d at 1273; *Logan v. Shealy,* 660 F.2d 1007, 1013 (4th Cir.1981), *cert. denied sub nom., Clements v. Logan,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

■■■ A valid strip-search must be rationally related to a legitimate penological purpose, *see Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); officers must have reasonable individualized suspicion that a detainee is carrying or concealing contraband. *Newkirk,* 834 F.Supp. at 788; *see Fuller,* 950 F.2d at 1446; *Walsh,* 849 F.2d at 69; *Mary Beth G.,* 723 F.2d at 1273. A strip-search may be justified where the individual is charged with a violent offense or has seen visitors. *See Masters,* 872 F.2d at 1255; *Dufrin v. Spreen,* 712 F.2d 1084, 1089 (6th Cir.1983).

### A. Henderson & Correctional Officers

■■ The correctional officers strip-searched Duffy not only when he first entered the Facility, but "at least once on every day of his false imprisonment for no apparent reason." (Compl.¶ 22). Duffy was strip-searched again after the Court of Common Pleas judge ordered his release. (Compl.¶ 27). The court cannot determine in a motion to dismiss whether the correctional officers had any basis for a strip-search of Duffy when he first entered the Facility on September 29, 1995. The initial strip-search may have been permissible.

If Duffy's allegations are true, the correctional officers engaged in a pattern of arbitrarily strip-searching him at least once per day, absent any security concern and despite his lack of access to contraband or visitors. Officers Cavanaugh and Burns allegedly

strip-searched Duffy even after his release was ordered by the state court judge. Such actions, if true, and if unsupported by any legitimate penological interest, would violate substantive due process. *See Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 715–16 (9th Cir.1989); *Stewart*, 767 F.2d at 156–57; *Hill*, 735 F.2d at 394–95. The court will not dismiss Duffy's substantive due process claim against the correctional officers for strip-searches.

Duffy has not alleged Henderson had any role in his strip searches, either initially upon his arrival at the Facility or during the ensuing weekend. The court will dismiss Duffy's substantive due process claim for strip-searching against Henderson.

### B. Official Capacity Suits Against Facility Personnel

█ Duffy has made no allegations the correctional officers who strip-searched him acted according to any policies or customs of the Facility. Because official capacity suits against the correctional officers must be analyzed as suits against Bucks County itself, Duffy must have alleged the correctional officers acted pursuant to Bucks County Facility policy or custom. Duffy alleged the correctional officers acted according to Sheriff's Office policies, even though they were not employed by the Sheriff. Because Duffy has made no allegation the correctional officers acted pursuant to Facility policy or custom, to which they were required to adhere, they cannot be liable in their official capacities; Duffy's allegations are deficient and will be dismissed.

### C. Sheriff's Office

None of the individual defendants were employed by the Sheriff's Office. The Sheriff's Office cannot be liable for actions taken by employees of an unrelated agency; it also is not a proper § 1983 defendant. *See Pino*,

1997 WL 811011, at *1; *Talley*, 1997 WL 135705, at *2; *Ellis*, 1996 WL 683868, at *4; *Irvin*, 937 F.Supp. at 450. Duffy's strip-search claim against the Sheriff's Office will be dismissed.

### D. Vasquez

█ Vasquez had no involvement in Duffy's incarceration after he secured a bench warrant for Duffy's arrest. Vasquez was not involved in Duffy's detention and did not participate, directly or indirectly, in the strip-searches. If the correctional officers acted arbitrarily or contrary to any official policies or customs of the Facility, regardless of any policies enacted by non-related agencies, Vasquez could not have foreseen that conduct and cannot be held accountable for those consequences. The court will dismiss Duffy's strip-search claim against Vasquez.

### E. Probation Dept.

The Probation Dept. is not a proper defendant under § 1983 and Duffy cannot maintain a claim for the strip-searches against it. *See Pino*, 1997 WL 811011, at *1; *Talley*, 1997 WL 135705, at *2; *Ellis*, 1996 WL 683868, at *4; *Irvin*, 937 F.Supp. at 450. The Probation Dept's motion to dismiss this claim will be granted.

### IV. Qualified Immunity

█ A court reaches the issue of qualified immunity only after determining that a plaintiff has alleged a violation of a constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Pro v. Donatucci*, 81 F.3d 1283, 1287 (3d Cir.1996);. Duffy has alleged a violation of his procedural and substantive due process rights, so the qualified immunity defense must be considered.[8]

█ Neither governmental agencies nor individuals sued in their official capacity are

---

8. Vasquez does not argue for absolute immunity, although probation officers have been held absolutely immune for actions integrally related to the judicial process. Such absolute immunity does not apply to a probation officer's investigative acts more akin to law enforcement, such as seeking an arrest warrant or preparing for a violation of probation hearing. *See Tripati v.*

*United States INS*, 784 F.2d 345, 348 (10th Cir. 1986), *cert. denied*, 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988); *Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir.1985); *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984); *Spaulding v. Nielsen*, 599 F.2d 728, 729 & 729 n. 2 (5th Cir.1979).

accorded qualified immunity. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Owen v. City of Independence,* 445 U.S. 622, 650, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *W.B. v. Matula,* 67 F.3d 484, 499 (3d Cir. 1995); *Hynson v. City of Chester,* 827 F.2d 932, 934 (3d Cir.1987), *cert. denied sub nom., Delaware County Prison Bd. v. Hynson,* 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988).

Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Government officials who reasonably but mistakenly violate a plaintiff's constitutional rights are immune from liability. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* 483 U.S. at 640, 107 S.Ct. 3034. The "inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997).

"The qualified immunity standard gives ample room for, mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *see Malley v. Briggs,* 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

▇▇▇▇ Defendant Vasquez seeks qualified immunity. Duffy argues that Vasquez is not entitled to qualified immunity because he is a probation officer not a "police official." *See* Pltff.'s Brief at 8. Qualified immunity is not limited to police officials, but extends to any governmental official performing a discretionary function. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. "It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to matters committed by law to his control or supervision." *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780 (1896). Vasquez performed discretionary functions as a probation officer; Duffy contends Vasquez harassed him in an arbitrary and malicious manner, (Compl.¶¶ 15–16), in the performance of discretionary duties. Vasquez could claim qualified immunity if the defense were otherwise applicable.

▇▇▇▇ But Vasquez is accused of maliciously and arbitrarily obtaining Duffy's arrest and detention, although he knew that Duffy was innocent. It is well-established that such action, if proved, would violate substantive due process. *See Dowling,* 855 F.2d at 141. A reasonable probation officer could not have believed such action was lawful in light of clearly established law and the information allegedly in the officer's possession. Vasquez is not entitled to qualified immunity.

## V. Statute of Limitations

Duffy filed his original Complaint on October 1, 1997, and completed service of process on January 23, 1998 when defense counsel accepted service on behalf of all parties, including Jane Doe and John Does 1 through 10. Defendants argue Duffy's "intolerable delay" makes his Complaint and service untimely. *See* Defs.' Brief at 16.

▇▇▇▇ Section 1983 does not contain a statute of limitations; "federal courts must look to the statute of limitations governing analogous state causes of actions." *Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 457 n. 9 (3d Cir.1996). The "tort action for the recovery of damages for personal injuries is the best alternative available." *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Pennsylvania, the statute of limitations for personal injury actions is two years. *See* Pa. Cons. Stat. Ann. § 5524; *Urrutia,* 91 F.3d at 457 n. 9.

"A civil action is commenced by filing a complaint with the court." Fed. R.Civ.P. 3. "In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations." *Henderson v. United States,* 517 U.S. 654, 116 S.Ct. 1638, 1641 n. 2, 134 L.Ed.2d 880 (1996); *see West v. Conrail,* 481 U.S. 35, 39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987).

Duffy avers his substantive and procedural due process rights were violated between September 29, 1995 and October 2, 1995 when he was finally released from the Facility. Duffy's initial Complaint was filed October 1, 1997, within the two-year statute of limitations for events occurring on October 1 and 2, 1995. Duffy's Complaint is not time-barred as to his claims against the correctional officers for the continuing strip-searches and his second confinement on October 2, 1995. *See Ratcliffe v. Insurance Co. of North America,* 482 F.Supp. 759, 763 (E.D.Pa.1980); *Mitchell v. Hendricks,* 68 F.R.D. 564, 568 (E.D.Pa.1975).

As to Duffy's claim for false imprisonment against Vasquez, it is unclear whether Duffy learned of the reason for his imprisonment on September 29, 1995, when he was first arrested, or if he did not learn of the reason and Vasquez's involvement until his court hearing on October 2, 1995. If Duffy learned of Vasquez's involvement prior to October 1, 1995, his claim is time-barred; if he did not learn the reason of his arrest until after October 1, 1995, his claim for false imprisonment was timely filed. This is a question of fact that cannot be resolved on a motion to dismiss.

Service of the Complaint must be made within 120 days of filing. *See* Fed.R.Civ.P. 4(m). Duffy served his Complaint on defendants on January 23, 1998, 114 days after filing; Duffy's Complaint was timely served. Defendants' motion to dismiss based on the statute of limitations or untimely service will be denied.

### CONCLUSION

The motion to dismiss Duffy's substantive due process claim for his false arrest and detention will be granted as to Henderson (Jane Doe), the correctional officers (the John Does), the Sheriff's Office and the Probation Dept., but denied as to Vasquez in his individual and official capacities. The motion to dismiss Duffy's procedural due process violation for his confinement from the afternoon of September 29, 1995 until his court hearing on October 2, 1995 will be granted as to all defendants. The motion to dismiss Duffy's procedural due process claim for his second confinement after his release was ordered on October 2, 1995 will be granted as to Henderson (Jane Doe), Officers Nagorski, Jackson, Gerrity, Greene, Hagerity, Godin, Keim, Ledger and Feliciano (John Does 3 through 10), Vasquez, the Sheriff's Office, the Probation Office and Officers Cavanaugh and Burns (John Does 1 & 2) in their official capacities, but denied as to Officers Cavanaugh and Burns (John Does 1 & 2) in their individual capacities. The motion to dismiss Duffy's substantive due process claim for the strip-searches will be granted as to Henderson, Vasquez, the Probation Dept., the Sheriff's Office and the correctional officers (John Does 1 through 10) in their official capacities and denied as to the correctional officers (John Does 1 through 10) in their individual capacities. Vasquez is not entitled to qualified immunity. Defendants' motion to dismiss Duffy's Complaint based on the statute of limitations will be denied.